33 F.3d 60
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kelvin NEAL, Defendant-Appellant.
 No. 93-50568.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 5, 1994.*
Decided Aug. 18, 1994.
 
 1
 Before: O'SCANNLAIN, and T.G. NELSON, Circuit Judges, and MERHIGE,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Kelvin Neal (Neal) appeals his convictions for conspiracy and possession of twenty kilograms of cocaine with intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1), 846. We affirm.
 
 I. SUFFICIENCY
 A. Conspiracy
 
 4
 There was sufficient evidence to establish a conspiracy and Neal's connection to that conspiracy. See United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987) (elements of conspiracy); see also United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991) (evidence of slight connection proven beyond reasonable doubt is sufficient to convict a defendant of knowingly participating in an established conspiracy). Tony testified that he and Neal had been dealing in small quantities of cocaine around 1990 and then began dealing in kilos in the summer of 1991. Tony also stated that he began arranging for Cruz to supply cocaine for Neal in approximately December 1991 or January 1992. During May 1992, Tony negotiated for the sale of twenty kilos of cocaine to Neal for $375,000 which Cruz was to supply.
 
 
 5
 Fred testified that he and Neal were in the "narcotics business" and that he worked for Neal who told him what to do. Neal supplied him with money and told him to go to Los Angeles where he was to purchase cocaine and deliver it to a certain destination in Chicago, all at Neal's direction. Fred estimated that he had acted as Neal's courier fifteen times. Fred testified that at Neal's direction, he obtained $375,000 from Deshawn McNarry. Neal told him that he was to fly to Los Angeles and purchase the cocaine for him.
 
 
 6
 Moreover, the phone records corroborated the testimony of the witnesses. The records established that Neal had been in constant contact with members of the conspiracy throughout the drug deal (May 11 through May 15).
 
 
 7
 Neal argues that the "uncredible testimony of alleged co-conspirators Tony, Fred and others" is insufficient to establish his guilt. However, even "[t]he uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face." United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.1993). The testimony of several accomplices in this case is neither incredible nor insubstantial. Furthermore, the fact that Branch provided contrary testimony does not establish that the evidence was insufficient. "We must respect the exclusive province of the jury to determine the credibility of witnesses, resolve the evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved such matters in a manner which supports the verdict."[1] United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989) (internal quotations omitted).
 
 B. Possession
 
 8
 A conviction for possession may be based upon co-conspirator liability, aiding and abetting, or the exercise of dominion and control over the contraband. Mares, 940 F.2d at 460. The jury was instructed on the Pinkerton co-conspirator liability theory. There is ample evidence that a conspiracy existed; that Neal was a party to that conspiracy; and that members of the conspiracy possessed cocaine for the purpose of furthering the unlawful scheme to distribute cocaine.[2] See id.
 
 II. LEADERSHIP ROLE
 
 9
 The facts support application of the four-level enhancement for Neal's role in the offense. See U.S.S.G. Sec. 3B1.1 (Nov. 1992) (four-level increase appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive").[3]
 
 
 10
 Neal organized the procurement and distribution of cocaine. See Sec. 3B1.1, comment. (n. 3); see also United States v. Avila, 905 F.2d 295, 299 (9th Cir.1990) (four-level enhancement for leadership role proper where defendant "coordinated the procurement and the distribution of both cocaine and heroin"); cf. United States v. Mares-Molina, 913 F.2d 770, 773-74 (9th Cir.1990) (two-level increase for managerial or supervisory role inappropriate where there were no facts to support conclusion that defendant exercised control or was otherwise responsible for organizing or supervising others in commission of offense). He directed two of his couriers (Fred and Branch) to obtain money for the cocaine and then directed them to fly to Los Angeles to conduct the drug deal. When things went awry after DEA agents seized the money from Fred, Neal directed Brewer to fly to Los Angeles to replenish the lost money. Moreover, Fred testified that he alone made fifteen trips to Los Angeles to retrieve cocaine for Neal and that Brewer, Branch and Bullock were also Neal's couriers. See Sec. 3B1.1, comment. (n. 3).
 
 
 11
 Neal also argues that there was insufficient evidence to establish that five or more participants were involved in the conspiracy. We disagree. The evidence indicates that at least five participants[4] were involved: Neal,[5] Fred, Tony,[6] Brewer, Branch, and Bullock. Furthermore, "[w]hile an enhancement under section 3B1.1(a) or (b) is proper only in a criminal activity involving more than five participants, there is no requirement, as [Neal] seems to suggest, that the defendant exercise authority over at least five participants before the enhancement can be applied." United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993) (first emphasis added) (fact that defendant did not supervise more than one participant did not preclude four-level enhancement as matter of law where there was sufficient evidence of leadership and where conspiracy involved at least five participants), pet. for cert. filed (April 1, 1994); see also United States v. Smith, 924 F.2d 889, 896 (9th Cir.1991) (same).
 
 
 12
 There is a conflict among the circuits on the issue of whether Sec. 3B1.1 permits a leadership enhancement only if a defendant leads five or more participants or if, as this circuit has held, the adjustment properly applies where a defendant leads one or more participants in a criminal activity involving five or more participants. See United States v. Okoli, 20 F.3d 615, 616 (5th Cir.1994) (noting conflict and collecting cases). However, a recent amendment to the Guidelines clarifies the number of participants over whom a defendant must exercise authority. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." Sec. 3B1.1, comment. (n. 2) (Nov. 1993) (emphasis added); see also Okoli, 20 F.3d at 616 (because amendment merely clarified Guideline language, it provided guidance; therefore, enhancement appropriate where defendant led one participant and conspiracy involved at least five participants).
 
 
 13
 In addition, contrary to Neal's argument, the evidence indicates that Brewer, Branch and Bullock were criminally responsible for the commission of the offense. Not only do the facts support an inference that they were couriers, Fred testified that they were couriers. Nor is there a requirement that they be convicted in order to be considered a "participant." See Sec. 3B1.1, comment. (n. 1). Therefore, we find that the district court did not clearly err in increasing Neal's offense level for his leadership role. See Mares-Molina, 913 F.2d at 773 (clear error review).
 
 III. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 14
 Finally, Neal argues that he was denied effective assistance of counsel because his trial counsel failed to object to the admission of (1) bad act evidence, and (2) hearsay statements. Generally, ineffective assistance of counsel claims should be raised in a collateral attack pursuant to 28 U.S.C. Sec. 2255. United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991). Nonetheless, because we find that the record in this case is sufficiently complete to decide the issue, we will address the merits of Neal's ineffective assistance of counsel claim. See id.
 
 A. Rule 404(b) Evidence
 
 15
 Specifically, Neal objects to a portion of Tony's testimony in which Tony stated that he had conducted prior drug transactions with Neal from around 1990 (involving small quantities of drugs) through part of 1992. During the summer of 1991, the transactions changed from dealing in small amounts to dealing in kilograms.
 
 
 16
 We conclude that the evidence complained of does not constitute "other acts" evidence under Fed.R.Evid 404(b); rather, it was direct evidence of the ongoing conspiracy. The indictment charges Neal with a conspiracy "[b]eginning on a date unknown" and continuing to on or about September 8, 1992. In United States v. Lai, 944 F.2d 1434 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992), the defendant objected to the testimony of a co-conspirator regarding several drug transactions which occurred in late 1982. Id. at 1439. The defendant claimed that the transactions constituted prior bad act evidence because they occurred outside the time period charged in the indictment (October 1985). Id. We rejected his argument, holding that the drug transactions did not constitute prior bad act evidence because the indictment charged that the conspiracy began at an unknown time and continued to on or about October 1985. Id. Therefore, we held that those transactions were direct evidence of the charged conspiracy. Id.
 
 
 17
 Similarly, as in Lai, the indictment in this case charges that the conspiracy began at an unknown date. Consequently, the drug transactions about which Tony testified were direct evidence of the conspiracy.[7] For the same reasons, Fred's testimony about being in the drug business with Neal was properly admissible as direct evidence of the conspiracy.
 
 
 18
 Because the evidence was admissible as direct evidence of the conspiracy, neither defense counsel's failure to object, nor his failure to request limiting instructions, was prejudicial. See Molina, 934 F.2d at 1447 (even if defense counsel's performance was deficient, a defendant must also establish that such deficient performance resulted in prejudice; i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).
 
 B. Hearsay Statements
 
 19
 Neal identifies two hearsay statements to which counsel should have objected: (1) Agent DeMorat's statement that Fred told him the money seized belonged to Neal; and (2) Officer Hughes' statement that Fred told him the money belonged to Neal. However, by Neal's own admission, defense counsel did in fact object to the first statement on hearsay grounds and the district court sustained the objection. As to the second statement, even if it was erroneously admitted, it was harmless. Given the evidence against Neal, it is more probable than not that its admission did not affect the verdict, see supra, sufficiency issue. See United States v. Harrison-Philpot, 978 F.2d 1520, 1527 (9th Cir.1992), cert. denied, 113 S.Ct. 2392 (1993) ("[A]n erroneous admission of evidence is harmless if it is more probable than not that its admission did not affect the jury's verdict.").
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Similarly, although Neal argues that Branch's failure to identify his voice on the tapes is crucial evidence of his innocence, Branch was unable to explain three phone calls from Neal the day Branch left Chicago. The jury was free to disregard his testimony in light of Tony and Fred's contrary testimony
 
 
 [2]
 Neal concedes that members of the conspiracy possessed the cocaine with the intent to distribute it
 Neal also argues that he did not exercise dominion and control over the cocaine for purposes of the possession charge. He is correct in asserting that there is insufficient evidence to support a dominion and control theory of liability. However, the Government need only establish liability under one theory. Thus, because there is sufficient evidence to establish his liability under the co-conspirator liability theory, we do not reach this issue.
 
 
 [3]
 Because Neal was sentenced on July 28, 1993; the 1992 Guidelines apply
 
 
 [4]
 "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. Sec. 3B1.1, comment. (n. 1)
 
 
 [5]
 "The defendant may be considered in calculating the total number of participants for purposes of section 3B1.1." United States v. Atkinson, 966 F.2d 1270, 1276 n. 8 (9th Cir.1992), cert. denied, 113 S.Ct. 1644 (1993)
 
 
 [6]
 Neal "concedes that there is evidence, although contradictory, Tony and Fred were participants in the criminal activity."
 
 
 [7]
 Neal argues that the prior conduct was not evidence of the charged conspiracy because the overt acts allegedly occurred around May 1992. However, in Lai, the overt acts allegedly occurred in July 1983, while the drug transactions held to be direct evidence of a conspiracy beginning on an unknown date occurred in late 1982. See Lai, 944 F.2d at 1439