980 F.2d 732
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert VANCE (91-2234), Jonas Lipscomb (91-2235),
Defendants-Appellants.
 Nos. 91-2234, 91-2235.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1992.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Robert Vance and Jonas Lipscomb here appeal their convictions on federal cocaine charges. We shall affirm both convictions.
 
 
 2
 * Undercover agents of the Drug Enforcement Agency, working with a confidential informant named Larry Cooper, made three purchases of cocaine early in 1991. The first of these transactions occurred on January 18, 1991, when Agent Randall Terry called a drug dealer named Mark Cobb to arrange for the purchase of an ounce of cocaine. Defendant Vance picked up Mark Cobb at his home, 8201 Wisconsin Street, Detroit, and accompanied him to a McDonald's restaurant in Dearborn, Michigan, where Agent Terry was waiting. In response to an inquiry by Agent Terry, Cobb identified defendant Vance as his source of supply. Cobb suggested that the transaction be concluded at his residence, but Agent Terry balked at this. Defendant Vance thereupon told Cobb to "forget the whole thing" and leave the restaurant. Vance then drove Cobb back to his residence. After further negotiations, Agent Terry went to Mr. Cobb's home on Wisconsin Avenue and bought the ounce of cocaine there. Mr. Vance was not present at the time.
 
 
 3
 The second transaction occurred on February 21, 1991, with Agent Terry buying an eighth of a kilogram of cocaine from Mr. Cobb at a restaurant on Michigan Avenue in Detroit. Several calls were necessary to work out the details of the transaction. Mr. Cobb instructed Agent Terry to call him at 834-1659, which proved to be the number of a telephone at a certain residence on Burnett Street in Detroit. Defendant Jonas Lipscomb lived at the Burnett Street residence.
 
 
 4
 The final transaction took place on March 15, 1991. Mr. Cobb had apparently grown suspicious of Agent Terry, and informant Cooper contacted defendant Lipscomb directly to inquire about buying a large quantity of cocaine. Several calls were necessary to arrange the price, quantity, and procedure for making the purchase. Each of these calls was made to 834-1659. Mr. Cooper drove to the Burnett street house, which was kept under surveillance by DEA agents. Once inside, Mr. Cooper talked with defendant Lipscomb about the mechanics of making payment. Defendant Vance arrived at the house and became involved in the conversation too. Defendant Vance grew tired of working out the details and said "Well, the hell with it, just take it all and we'll follow you and we'll pick up the money there" (referring to a hotel where the informant was staying).
 
 
 5
 Defendant Lipscomb went outside at one point, and agents observed him taking a jacket out of a van parked near the house. Once back inside, he took several packets of cocaine from the jacket. A man named Darcy Lovett then arrived at the house with two additional bags of cocaine. Informant Cooper eventually left the house with a total of 2.5 kilograms of cocaine. The defendants followed him in the van. When they reached the hotel where they were to be paid, the defendants were arrested.
 
 
 6
 Both defendants were convicted on charges of conspiracy and possession with intent to distribute the 2.5 kilograms of cocaine involved in the final purchase. Defendant Vance was also convicted of aiding and abetting the January 18, 1991, transaction between Mr. Cobb and Agent Terry. Because there was an elementary school one block away from Mr. Cobb's residence, defendant Vance was convicted of distribution within 1000 feet of a school. Both defendants filed timely notices of appeal.
 
 II
 
 7
 The conversations between Mr. Cobb and Agent Terry setting up the January 18, 1991, transaction were tape recorded. The tape containing the conversations was received in evidence at trial as Exhibit 2. The prosecution had prepared a transcript of these and other taped conversations, and when asked by the court which pages of the transcript corresponded to Exhibit 2, the prosecutor answered that pages 1 through 7 did. Portions of the tape were then played for the jury.
 
 
 8
 The jury requested the tape after retiring to deliberate. When it replayed the tape in the jury room, the jury heard, in addition to the other conversations, a conversation between Mr. Cobb and Agent Terry that had not been played in open court. The jury inquired of the court why that conversation had not been played. The court conferred with counsel and confirmed that although the entire tape had been received into evidence, only portions of it had been played. The court proposed to inform the jury of this and asked if anyone objected. No objection was made, and the jury was given an appropriate instruction.
 
 
 9
 Defendant Lipscomb now contends that the jury's consideration of the additional conversation constituted prejudicial error. Although it is true that the prosecutor described the exhibit as pertaining only to the first six pages of the transcript, which did not include the additional conversation, when the tape was admitted it was clearly described as containing all of the conversations between Mark Cobb and Agent Terry on January 18. The only objection made at the time concerned the authenticity of the tape, and that objection was overruled.
 
 
 10
 We find no abuse of discretion in this situation. The tape's contents were described accurately when it was admitted, and neither defendant attempted to foreclose the jury's consideration of any of the conversations between Agent Terry and Mark Cobb.
 
 
 11
 Defendant Lipscomb also contends that the court erred in admitting tape recordings of conversations between Mark Cobb and Agent Terry concerning the January 19 and February 21 transactions. These recordings were not relevant to him, defendant Lipscomb argues, because there was no evidence that he was involved in the cocaine conspiracy at the time of these transactions. The argument is not persuasive. Agent Terry, Mark Cobb, and the informant met as early as January 11, 1991, to discuss possible cocaine purchases, and the informant then drove Cobb to defendant Lipscomb's residence on Burnett Street so that Cobb could tell "his source" that he had located someone looking for a large quantity of cocaine. When defendant Vance drove Mr. Cobb to the McDonald's restaurant at the time of the January 18 transaction, moreover, he was driving a car registered to defendant Lipscomb. Even if Lipscomb had no ties to the conspiracy at this juncture, which seems unlikely, a later decision to join the conspiracy would make him liable for the actions of his co-conspirators prior to the time he joined. United States v. Kelley, 849 F.2d 999, 1003-04 & n. 5 (6th Cir.), cert. denied, 488 U.S. 982 (1988).
 
 
 12
 Defendant Lipscomb alleges error in the use at trial of Exhibit 11, an address book taken from Mr. Lipscomb's home on Burnett Street. He argues that only a photostatic copy of the front cover of the address book was admitted during the trial, and that during closing argument the prosecutor produced the address book itself and referred to specific numbers recorded on inside pages. When the address book was admitted, however, Agent Terry testified that it was in substantially the same condition as when it was seized from Mr. Lipscomb's home. In these circumstances, we find no error in the court's conclusion that the entire address book had been properly admitted.
 
 
 13
 Two electronic beepers or telephone pagers were taken from the defendants when they were arrested on March 15, 1991. Defendant Lipscomb questions the relevance of the beepers and argues that their prejudicial effect outweighed any probative value they might have had.
 
 
 14
 The relevance of the beepers was established through the trial testimony of informant Cooper. He testified that Mark Cobb contacted Agent Terry on Terry's beeper to arrange the February 21 transaction and that defendant Lipscomb beeped Darcy Lovett during the March 15 transaction. Defendant Lipscomb obviously used beepers, whether his own or others, to help complete drug transactions. We have noted the beeper's "fundamental importance in today's drug trade." U.S. v. Meriwether, 917 F.2d 955, 958 (6th Cir.1990) (citing cases). See also U.S. v. Jaramillo-Suarez, 950 F.2d 1378, 1385 (9th Cir.1991), and U.S. v. Rollins, 862 F.2d 1282, 1286 n. 1 (7th Cir.1988), cert. denied, 490 U.S. 1074 (1989). The beepers were properly admitted.
 
 
 15
 Defendant Vance argues that there was insufficient evidence to link him to a cocaine conspiracy. "Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1330 (6th Cir.1992), citing Jackson v. Virginia, 443 U.S. 307, 319 (1979). To sustain a conspiracy conviction, the government must prove the existence of an agreement to violate the drug laws and must prove that each conspirator knew of, intended to join, and participated in the conspiracy. U.S. v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991). As noted above, it is not necessary to prove defendant Vance's involvement in the conspiracy at each stage of its existence. See Kelley, supra.
 
 
 16
 The evidence concerning the January 18 transaction implicated defendant Vance, and subsequent events left little doubt of his involvement in the conspiracy. Informant Cooper testified that between the drug purchases of January 18 and February 21 he went to defendant Lipscomb's home trying to locate Mark Cobb. While there he saw defendant Vance put a plastic bag filled with white powder into a shoe box and leave the premises with it. Mr. Cooper's testimony concerning the 2.5 kilogram transaction on March 15 establishes that defendant Vance played a key role in obtaining part of the cocaine from another supplier and in working out the procedure through which the defendants would be paid for the cocaine. Defendant Vance told the informant that he had an appointment later that day to pick up an additional five kilograms of cocaine. Defendant Vance accompanied defendant Lipscomb to the hotel to get the money for the cocaine. This evidence was more than sufficient to show that defendant Vance was involved in a conspiracy to violate the drug laws.
 
 
 17
 The contention that there was no school within 1000 feet of Mark Cobb's residence is without merit. Agent Mark German testified that the Detroit Urban Lutheran Elementary School was about 175 feet from Mr. Cobb's house. Defendant Vance did not challenge Agent German's testimony on this point, or introduce any evidence calling into doubt the proximity of the school.
 
 
 18
 We have carefully considered the other issues the defendants raise in this appeal, and we find them without merit. The convictions are AFFIRMED.