998 F.2d 1010
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Deshawn HUGHES, Defendant-Appellant.
 No. 92-5475.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: July 9, 1993.
Decided: July 28, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-91-193-G)
 Danny T. Ferguson, Winston-Salem, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Paul A. Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL, HAMILTON, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Deshawn Hughes appeals his jury convictions for conspiring to distribute more than fifty grams of crack cocaine and possessing with the intent to distribute more than fifty grams of crack. The jury acquitted Hughes of a firearms violation. On appeal, Hughes challenges the denial of his motion to suppress his allegedly involuntary confession, the admission of expert testimony related to pagers or beepers, and the sufficiency of the evidence. Finding no merit in these arguments, we affirm.
 
 
 2
 Hughes, only eighteen years old and a senior in high school at the time of his arrest in September 1991, was one of four individuals indicted by a federal grand jury after local police searched an unfurnished apartment on Summertree Lane in Greensboro, North Carolina, in response to a disturbance call. The four were charged with conspiracy to distribute in excess of fifty grams of crack, in violation of 21 U.S.C.A. §§ 841(b)(1)(A) and 846 (West Supp. 1993), possession with the intent to distribute more than fifty grams of crack, in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(A) (West 1981 & Supp. 1993) and 18 U.S.C. § 2 (1988), and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), (2) (1988).
 
 
 3
 After the two-day trial, Hughes's counsel filed two motions for a new trial arguing in part that Hughes was prejudiced at trial because the Drug Enforcement Administration ("DEA") agent who had taken his statement was not called to testify at either the suppression hearing or trial. Four days after trial DEA Agent Bob Ingram provided sworn testimony that Hughes was never promised that charges would be dropped in return for his cooperation, but that Hughes was told his cooperation with the authorities would be made known to the United States Attorney.
 
 
 4
 The district court later denied the motions for a new trial and Hughes was sentenced to 121 months in prison, at the low end of the sentencing guidelines range, with a subsequent five-year term of supervised release.
 
 I.
 
 5
 Hughes first argues on appeal that because he testified that he told police he wanted to hire an attorney rather than depend upon the public defender, all questioning should have ceased, the Government violated Edwards v. Arizona, 451 U.S. 477 (1981), and the purported confession should have been suppressed. The district court denied the suppression motion finding that Hughes voluntarily waived his rights, and that there was no indication Hughes wanted a lawyer before answering police questions.
 
 
 6
 An accused asserting his right to counsel after receiving Miranda warnings may not be interrogated outside counsel's presence, unless the accused initiates further communication with the police. Edwards, 451 U.S. at 484-85. An accused may waive his rights if the waiver is knowing, voluntary, and intelligent. Miranda v. Arizona, 384 U.S. 436, 475 (1966). The Government bears the burden of showing a proper waiver by the preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Appellate review of factual findings surrounding waiver are upheld unless clearly erroneous. See United States v. Gordon, 895 F.2d 932, 939 (4th Cir.), cert. denied, 498 U.S. 846 (1990). Courts consider the totality of the circumstances surrounding the interrogation in determining the validity of a waiver. Moran v. Burbine, 475 U.S. 412, 421 (1986).
 
 
 7
 Officer Lisa White of the Greensboro Police Department testified at the suppression hearing that she and Officer William Phifer read Hughes the rights form at the police department about 3:46 a.m. on the morning after his arrest. She said that Hughes signed the form twice, including the waiver section. White testified that Hughes did not appear to be under the influence of drugs or alcohol, and that police did not threaten or coerce Hughes. She said that she did not recall Hughes saying anything about a lawyer when she was in the interview room.
 
 
 8
 Officer Phifer testified that Hughes initiated the conversation leading to his statement-that the DEA agent did not interview Hughes until Hughes stated that he wanted to talk some twenty minutes after he was given his Miranda warnings. Phifer also said that he was in the room the entire time that Ingram conducted the interview withHughes. Phifer specifically denied that Hughes ever said he wanted an attorney, or preferred private counsel to the public defender. Further, Phifer testified that Ingram only promised Hughes that any cooperation would be made known to the prosecutor. Government agents may initiate conversations on cooperation and promise to make a defendant's cooperation known to the prosecutor. United States v. Wilson, 895 F.2d 168, 173 (4th Cir. 1990). Hughes testified at the hearing that Ingram, and not White, read him his rights, that he did sign the waiver but had not read the form, and that Ingram and others continued to question him after he said he was going to hire his own named lawyer. Ingram did not testify because he was out of state, and Hughes had failed to subpoena him as a defense witness.
 
 
 9
 We find that the district court did not clearly err in finding that under the totality of the circumstances Hughes voluntarily waived his Miranda rights, and did not request a lawyer before answering police questions. Therefore, the district court's denial of the motion to suppress was not in error.
 
 II.
 
 10
 Hughes next argues that Officer Phifer's testimony on the use of pagers in the drug trade was speculative and prejudicial under Fed. R. Evid. 403. Expert testimony based on specialized knowledge is admissible if it will assist the trier of fact to understand the evidence. Fed. R. Evid. 702. Courts have allowed police testimony that pagers or beepers are related to the drug trade. See United States v. Jaramillo-Suarez, 950 F.2d 1378, 1385 (9th Cir. 1991); United States v. Solis, 923 F.2d 548 (7th Cir. 1991); United States v. Sanchez Solis, 882 F.2d 693, 696 (2d Cir. 1989).
 
 
 11
 Hughes objected when the prosecutor asked the detective what use a pager has in drug distribution. The district court properly allowed Phifer to testify that pagers were extensively used by people in the drug trade because of Phifer's experience in narcotics investigations and his specialized drug investigation training. We find that Hughes did not suffer any unfair prejudice from the admission of this opinion, and that the district judge did not abuse his discretion in admitting the evidence.
 
 III.
 
 12
 Finally, Hughes argues on appeal that the district court erred in denying his motions for acquittal because his actions at the apartment were those of an innocent man and the Government did not prove his constructive possession of any cocaine. We find that the evidence was sufficient to support a criminal conviction because any rational jury could have found the essential elements of the offenses beyond a reasonable doubt, after viewing the evidence in the light most favorable to the Government. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 13
 The jury heard that at the time police searched the apartment on Summertree Lane Hughes had a pager and $1400 in currency on his person, though Hughes testified that he was only playing with the pager and that he was holding the money for someone else in the apartment. The jury also heard Hughes's statement to the DEA agent, in which he admitted driving Fabian Luna, a codefendant, and another individual identified as "Ralphie," around Greensboro and High Point, North Carolina, on drug distribution trips during the summer of 1991 and in which he admitted visiting the apartment on Summertree Lane every other day. Officer Phifer also testified that Hughes tipped off police to the presence of 232.4 grams of cocaine powder in a Cadillac belonging to one of his codefendants, which tends to show his knowledge of the presence of a controlled substance and the goals of the conspiracy.
 
 
 14
 During the search of the unfurnished apartment, officers recovered 90.9 grams of crack from in and around the bathroom toilet bowl, found a loaded 9 mm pistol in a bedroom cabinet, and observed that though the kitchen lacked food the counter contained Ziploc baggies and telephone ledgers.
 
 
 15
 The weight of evidence and the credibility of witnesses are matters for the jury, United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989), and we find that there was sufficient evidence to find Hughes guilty of the two charges.
 
 
 16
 Therefore, we affirm Hughes's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED