UNITED STATES of America,
Plaintiff–Appellee,

v.

Marvin Joseph LINDSEY,
Defendant–Appellant.

No. 88–5054.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided June 9, 1989.

Gerard Engelskirchen for Allan H. Stokke, Santa Ana, Cal., for defendant-appellant.

John F. Walsh III, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Marvin Lindsey pleaded guilty conditionally to possession of illegal firearms and destructive devices. He reserved the right to appeal from the district court's denial of his motion to suppress evidence seized from his home. Lindsey contends that the police lacked the requisite probable cause and exigent circumstances to secure his house without a warrant, that the police failed to knock and announce before entry, that the police lacked probable cause to arrest him, and that his consent to search was involuntarily given. He asks this

court to set aside his conviction and to direct the district court to grant the motion to suppress evidence and allow him to withdraw his guilty plea. We affirm.

## BACKGROUND

On August 17, 1987, a narcotics informant arranged for Detective Cook of the Buena Park Police Department to buy methamphetamine from a local dealer named David Ogata. Cook met Ogata at approximately 3:40 p.m. while six other Buena Park detectives positioned themselves in the vicinity. Ogata requested that Cook pay the $1200 purchase price before delivery. Cook replied that he wanted to see the merchandise first.

Ogata said he would go to a nearby house and pick up the drugs from his source. He drove to Lindsey's residence at 722 Handy Street, trailed by three unmarked police vehicles. After a few minutes inside the house, Ogata got back in his car and returned to the parking area where Cook was waiting. Ogata tossed an envelope containing methamphetamine into Cook's car. He told Cook he had just obtained the drugs from "a bunch of crazy bikers with guns and bombs."

Ogata was quickly arrested. He refused to cooperate in the arrest of his drug source and repeated his comment about "guns and bombs." Cook believed that Ogata's source had "fronted" him the drugs and would be waiting his return with the payment. Cook phoned the Orange Police Department to request uniformed backup officers. The additional officers arrived approximately one hour later.[1] During that hour, the Buena Park detectives did not attempt to obtain a warrant to search the Handy Street house or place the house under surveillance.

When four backup officers arrived, the police proceeded to the house. They approached the door with weapons drawn. The police spotted Lindsey through a window and ordered him to put his hands in

1. The parties dispute the exact time sequence. The government concedes, however, that approximately an hour to an hour and a half elapsed between Ogata's arrest and the securing of Lindsey's home.

the air. The parties dispute whether the officers knocked and announced their purpose before entry. Once inside the house, the police handcuffed Lindsey and placed him under arrest. One other adult and several children were also found in the house. Lindsey gave the officers verbal and written consent to search his house. The search uncovered a sawed-off shotgun, automatic weapons, methamphetamine, thousands of rounds of ammunition, and plastic explosives.

Lindsey moved to suppress evidence seized during the search of his house. When the district court denied his motion, he pleaded guilty conditionally to possession of illegal firearms and destructive devices. Lindsey reserved his right to appeal the denial of his suppression motion. The district court sentenced Lindsey on February 1, 1988. Lindsey timely appealed. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## DISCUSSION

### I. *Probable Cause and Exigency to Secure Defendant's Home*

■ This court reviews de novo a district court's determination of the validity of a warrantless entry into a residence. *United States v. Castillo,* 866 F.2d 1071, 1079 (9th Cir.1988); *United States v. Alfonso,* 759 F.2d 728, 741 (9th Cir.1985). The district court's determinations of underlying facts, however, may not be reversed unless clearly erroneous. *Castillo,* 866 F.2d at 1079; *Alfonso,* 759 F.2d at 741.

■ The securing of a residence by police is a seizure subject to fourth amendment protection. *United States v. Howard,* 828 F.2d 552, 554 (9th Cir.1987); *United States v. Perdomo,* 800 F.2d 916, 918 (9th Cir.1986). The government in this case has a twofold duty. First, it must demonstrate probable cause to secure Lindsey's residence. Second, it must show the existence of exigent circumstances to excuse the lack of a warrant. *Howard,* 828 F.2d at 555. As part of the second requirement, the government must also show that a warrant could not have been obtained in time. *Id; United States v. Echegoyen,* 799 F.2d 1271, 1279 (9th Cir.1986).

### A. *Probable Cause*

■ "Entry into a person's home is so intrusive that such searches always require probable cause regardless of whether some exception would excuse the warrant requirement." *Howard,* 828 F.2d at 555. This court must make a "practical, common-sense decision" whether under the "totality of the circumstances" known to the police officers at the time they entered Lindsey's home, there was a "fair probability" that contraband or evidence of a crime would be found inside. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

The police undoubtedly had probable cause to believe that evidence of narcotics trafficking would be found at Lindsey's home. Ogata told Cook that he was going to get the drugs from a nearby source. He then drove directly to 722 Handy Street and parked in front of the house. He entered the house, returning to his car several minutes later. He returned directly to the parking lot where Cook was waiting and gave the detective a small package of methamphetamine. It was reasonable to infer from Ogata's statements and actions that the Handy Street residence housed his source of drugs. *See Perdomo,* 800 F.2d at 917–18 (drug courier drove to the defendant's house and entered, emerging several minutes later carrying a bag later found to contain drugs); *United States v. Kunkler,* 679 F.2d 187, 191 (9th Cir.1982) ("dealer's statements implicating another person as his 'source' and his repeated trips to [defendant's] home followed by the production of cocaine" sufficiently established probable cause).

### B. *Exigent Circumstances*

■ Exigent circumstances are defined as "those circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other conse-

quence improperly frustrating legitimate law enforcement efforts." *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). "The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion." *United States v. Licata*, 761 F.2d 537, 543 (9th Cir.1985). Moreover, because exigent circumstances necessarily imply insufficient time to obtain a warrant, the government must also show that a warrant could not have been obtained in time. *Howard*, 828 F.2d at 555; *United States v. Echegoyen*, 799 F.2d 1271, 1279 (9th Cir.1986).

■ We conclude that the facts known to the officers in this case gave rise to exigent circumstances justifying the warrantless entry into Lindsey's house. Exigent circumstances are frequently found when dangerous explosives are involved. *See, e.g., United States v. Sarkissian*, 841 F.2d 959, 962 (9th Cir.1988) (exigent circumstances justified FBI's warrantless search of luggage believed to contain explosive device); *Echegoyen*, 799 F.2d at 1278–79 (warrantless entry into home justified when officers smelled an explosive chemical emanating from the defendant's house); *United States v. Al–Azzawy*, 784 F.2d 890, 894 (9th Cir.1985), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986) (warrantless home arrest justified when police reasonably believed the defendant possessed explosives and was in an agitated state); *United States v. Brock*, 667 F.2d 1311, 1318 (9th Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983) (warrantless search of motor home justified when DEA agents knew explosive chemicals used in methamphetamine production were being used).

The police reasonably believed that Ogata's source at the Handy Street house possessed guns and bombs. The police were justifiably concerned about the presence of bombs in a densely populated residential neighborhood. Moreover, this concern was heightened by a reasonable belief that Ogata's source would learn of police intervention and use the guns and bombs to resist arrest. This court has repeatedly recognized that the apprehension of a drug courier can itself create an exigency if the drug supplier is likely to become suspicious when the courier fails to return. *See, e.g., Perdomo*, 800 F.2d at 919; *Kunkler*, 679 F.2d at 192. The police believed that Ogata's source had "fronted" him the drugs and would be waiting for Ogata to return with the payment. Cook formed this belief based on his two years of experience as a narcotics officer and his participation in 50 to 75 methamphetamine transactions. His belief was reasonable in light of Ogata's initial failure to bring the drugs and his request that Cook pay for them before delivery. The police believed that Ogata's failure to return within a reasonable time would alert the source to police intervention.

Lindsey makes two arguments against a finding of exigent circumstances based on possession of guns and bombs. First, he contends that the police could not reasonably believe Ogata's statements since they knew neither the basis for Ogata's information nor his reliability. Second, Lindsey argues that the officers' conduct in waiting at least an hour before securing the house demonstrated that no real exigency existed. We reject both contentions.

The police reasonably believed Ogata's statements about guns and bombs. Prior to learning Cook's true identity, Ogata told the detective that his source possessed guns and bombs. Ogata repeated this comment after his arrest. He refused to cooperate in the arrest of his source and appeared genuinely afraid of his source. Ogata himself carried a loaded gun. Furthermore, the police knew from their own experience that methamphetamine dealers were often armed. Under the totality of the circumstances, the police could reasonably believe that Ogata's source possessed guns and bombs.

In arguing that the one hour delay precludes a finding of exigency, Lindsey would have this court evaluate exigent circumstances from the circumstances known to the police *after* the warrantless entry. Exigent circumstances, however, must be

viewed from the circumstances known to the police *prior* to the warrantless action. *Licata,* 761 F.2d at 543. Immediately after Ogata's arrest, the officers requested reinforcements from the local police department. The officers expected the backups to arrive quickly. They did not realize that there would be a delay. As each minute passed, the officers reasonably expected the reinforcements to arrive momentarily. When the additional officers arrived, the police moved quickly to secure Lindsey's house. Under these circumstances, we cannot find that the delay evidenced a lack of real exigency. Furthermore, the delay did not dissipate the exigency. The source remained in possession of dangerous explosives and may have grown increasingly suspicious of police intervention.[2] Accordingly, exigent circumstances justified the initial entry.

■ A finding of exigent circumstances, however, does not end our inquiry. Since exigent circumstances imply that there is insufficient time to obtain a warrant, the government must show that a warrant, including a telephonic warrant, could not have been obtained in time. Lindsey contends that the police had ample time to obtain a telephonic warrant while they waited for reinforcements to arrive.

This court has acknowledged that obtaining a telephonic warrant is not a simple procedure. *United States v. Good,* 780 F.2d 773, 775 (9th Cir.), *cert. denied,* 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986). "A telephonic warrant may not be obtained simply by calling a magistrate. Among other things, a 'duplicate original warrant' must be prepared in writing and read to the magistrate verbatim." *United States v. Manfredi,* 722 F.2d 519, 523 (9th Cir.1983).

The police in this case did not attempt to obtain a warrant. We conclude, however, that under these circumstances the police lacked sufficient time to get a warrant.

The presence of bombs in a residential area created a serious exigency. The officers prudently requested assistance from the local police department. Since the officers did not know in advance that the reinforcements would be delayed, they did not begin the warrant process. We agree that quick action was necessary. A further delay to obtain a warrant would have been intolerable. Accordingly, the initial entry was lawful.

## II. *Compliance with Knock–Notice Requirement*

■ The federal "knock-notice" statute provides that a police officer, before opening the door of a house to enter, must give notice of his purpose and authority, and be refused admittance. 18 U.S.C. § 3109 (1982). "The interval of time an officer must wait between announcement and entry depends on the circumstances of each case." *United States v. McConney,* 728 F.2d 1195, 1206 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Lindsey contends that the police failed to comply with knock-notice requirements. In finding that no knock-notice violation occurred, the district court cited testimony by two officers that they knocked and announced their purpose prior to entering Lindsey's home through an unlocked screen door. The government does not claim that the police waited for a response before entering the house. The police had already spotted Lindsey through a window and ordered him to freeze at gunpoint.

"When police have properly knocked and announced their identity and purpose, mild exigency is sufficient to justify simultaneous entry when entry can be accomplished without physical destruction of property." *Id.* The police faced a serious exigency in this case and thus simulta-

**2.** We do not find that the police created this exigency. Although the delay may have increased the likelihood that Ogata's source would grow suspicious of Ogata's failure to return, the delay was not purposeful. The police acted in good faith in their attempt to obtain reinforce- ments and quickly secure Lindsey's house. *Cf. United States v. Driver,* 776 F.2d 807, 810 (9th Cir.1985) (exigent circumstances resulting from officers' own improper conduct will not excuse warrantless intrusion).

neous entry did not violate knock-notice requirements.

### III. *Probable Cause to Arrest Lindsey*

The determination of probable cause to arrest is a mixed question of law and fact that is reviewed de novo. *United States v. Smith,* 790 F.2d 789, 791 (9th Cir.1986); *United States v. Howard,* 758 F.2d 1318, 1319–20 (9th Cir.1985). The district court's determinations of any underlying facts are reviewed only for clear error. *Smith,* 790 F.2d at 791. Probable cause to arrest exists if at the moment of arrest, the facts and circumstances known to the arresting officers are "sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

Lindsey's arrest was supported by probable cause. The police already had probable cause to believe that the Handy Street house was involved in the sale of illegal narcotics. When the police entered the room where Lindsey was standing, they found him wearing a fully loaded pistol at his waist. Various weapons were lying around the room in plain view. Lindsey's presence in the house and the weapons found on and near him provided the officers with probable cause to believe he was involved in drug trafficking.

### IV. *Voluntariness of Lindsey's Consent*

Whether consent to search was voluntarily given is a question of fact and the district court's conclusion will not be reversed unless clearly erroneous. *United States v. Castillo,* 866 F.2d 1071, 1082 (9th Cir.1988); *United States v. Licata,* 761 F.2d 537, 544 (9th Cir.1985); *United States v. Alfonso,* 759 F.2d 728, 740 (9th Cir.1985). Whether consent was voluntary or coerced is determined from the totality of the circumstances surrounding the giving of consent. *Licata,* 761 F.2d at 544. "On appeal the evidence must be viewed in the light most favorable to the fact-finder's decision." *Castillo,* 866 F.2d at 1082.

Lindsey argues that his consent was coerced and, therefore, the search of his house was illegal. He contends that the police created a highly coercive atmosphere to overcome his free will and obtain his consent. He maintains that the police threatened to arrest his wife and take his children from him if he did not consent.

The district court found that Lindsey voluntarily consented to the search. The court found that the police did not threaten to arrest Lindsey's wife or take his children into custody. The court also found that after Lindsey gave verbal consent, he had time to reconsider his decision while one of the police officers went to the police station to obtain a consent form. When the officer returned, Lindsey signed the form and the search took place.

A person in custody is capable of giving valid consent to search. *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); *United States v. Tolias,* 548 F.2d 277, 278 (9th Cir.1977). We conclude that Lindsey's consent was freely given and the search pursuant to that consent was proper.

### CONCLUSION

Having concluded that the warrantless entry and arrest were lawful, and that Lindsey validly consented to the search of his home, the judgment of the district court is AFFIRMED.

NORRIS, Circuit Judge, dissenting:

I agree with the majority that the police had probable cause to believe that the methamphetamine came from Lindsey's house. I also agree that exigent circumstances would have existed had the police reasonably believed that the source in Lindsey's house was expecting Ogata to return with the money, because a delay in Ogata's return might have made the source nervous about the possibility of police involvement. If that thought had crossed the source's mind, it might have led to the destruction of evidence, flight by the source, or "some other consequence improperly frustrating legitimate law enforcement efforts," the evils toward which the exigency exception to the warrant re-

quirement of the Fourth Amendment is directed. *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The critical inquiry, then, is whether the police had a reasonable basis for believing that the source expected Ogata to return promptly with the money. In other words, was there a reasonable basis for believing that the source fronted Ogata with the drugs?

Detective Cook testified, as the majority notes, that he believed the source had fronted Ogata the drugs and was awaiting payment. The question, however, is whether that subjective belief was objectively reasonable. The majority holds that it was on the strength of the following analysis:

> Cook formed this belief based on his two years of experience as a narcotics officer and his participation in 50 to 75 methamphetamine transactions. His belief was reasonable in light of Ogata's initial failure to bring the drugs and his request that Cook pay for them before delivery.

Majority Opinion at 7. In other words, the majority grounds the reasonableness of Detective Cook's subjective belief in his experience as a narcotics officer, and in the factual circumstances of this case, i.e., the fact that Ogata did not bring the drugs with him initially and asked Cook for payment before delivery. The majority's rationale, however, not only fails to find any support in the record, it is flatly contradicted by Detective Cook's own testimony. On redirect examination, the following exchange took place between the government's attorney, Mr. Walsh, and Detective Cook:

> **Mr. Walsh:** Detective Cook, when you spoke with Mr. Ogata at the outset of the buy bust, did he ask for money?
>
> **Detective Cook:** Yes, he did.
>
> **Mr. Walsh:** And did you give it to him?
>
> **Detective Cook:** No, I didn't.
>
> **Mr. Walsh:** And what did he do after you didn't give it to him?
>
> **Detective Cook:** He told me that he would go to his connection and bring it [the drugs] back.
>
> **Mr. Walsh:** *Now, in your experience under those particular circumstances, is methamphetamine generally fronted?* (emphasis added)
>
> **Mr. Stokke** (defense counsel): Object. Speculation.
>
> **The Court:** Overruled.
>
> **Mr. Walsh:** Thank you, your Honor. You can answer the question.
>
> **Detective Cook:** *No, generally it isn't.* (emphasis added)

Reporter's Transcript (11/24/87) at 41–42.

Thus, Detective Cook expressly testified that in his experience methamphetamine is generally not fronted in cases such as this one, which squarely contradicts the majority's assertion that Detective Cook's narcotics experience and the particular facts of this case provide an objectively reasonable basis to support a subjective belief that the source fronted Ogata the drugs.

In light of his testimony that methamphetamine is generally not fronted in these kinds of cases, why did detective Cook later testify that it was his subjective belief that Ogata was in fact fronted the drugs? The record provides no answer. It is barren of any evidence that an objectively reasonable basis existed for Detective Cook's testimony that he believed that the drugs had been fronted.

In sum, then, the government has completely failed to carry its burden of proving exigent circumstances justifying the warrantless entry. *See United States v. Spetz*, 721 F.2d 1457, 1465 (9th Cir.1983). Accordingly, I dissent.