52 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank Eugene MAY, Defendant-Appellant.
 No. 94-10011.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1995.
Decided March 29, 1995.
As Amended April 10, 1995.
 
 Before: ALDISERT,* CHOY, and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In August of 1994, a jury convicted Mr. Frank Eugene May of importation of cocaine, use of a communication facility to import cocaine, and of being a felon in possession of a firearm in violation of 21 U.S.C. Secs. 952 and 843(b) and 18 U.S.C. Sec. 922(g)(1). May appeals the district court's denial of his motion to suppress statements and evidence obtained through a warrantless search of his hotel room. We affirm the district court's ruling.
 
 I.
 
 3
 On February 1, 1993, United States Customs Service Special Agent Ronald B. Wolflick learned that contraband had been discovered inside a Federal Express package addressed to Mr. May. At Wolflick's direction, the Federal Express manager telephoned May the next morning at the Regency Hotel, where May was staying, and told him that there was a package to be picked up. At approximately 8:40 a.m., May drove to the Federal Express office at the Guam International Airport where he received the package. Surveillance units then followed May from the Federal Express office to the Regency Hotel and observed him entering Room 901B.
 
 
 4
 Wolflick intended to talk to May and to seek his cooperation because he did not know whether May was aware that the package contained contraband, or whether May was merely an innocent courier. Fearing that May might immediately destroy the contents of the package if he knew customs agents were at his door, Wolflick asked the hotel manager to knock on the door and identify himself as the manager or room service.
 
 
 5
 At the time the manager knocked on May's door, a number of officers were positioned at the end of the ninth floor hallway. Wolflick was standing with the manager and two other officers near May's door. The officers were wearing raid jackets which identified them as police or customs officers. The manager knocked on the door and announced "room service" or "maid service."[1] A male voice inside responded to the effect of "I'm busy, come back later." Uncertain how to proceed, Wolflick, the manager, and one of the officers walked away from the door, leaving Officer Terlaje positioned outside the door.
 
 
 6
 After approximately two or three minutes, while the officers were still in the hallway, May opened the door and looked out. Officer Terlaje announced, "Guam Police, freeze," and May immediately slammed the door. From May's reaction, Wolflick concluded that May was aware that the package contained contraband and that he intended to destroy it. Thus, Wolflick immediately directed the officers to force the door open.
 
 
 7
 As they entered the room, Wolflick saw May running toward the balcony and Officer Terlaje noticed May was throwing something over the balcony. Terlaje tackled and handcuffed May. A woman named Karen Jean Johnson was also in the room. An officer stationed on the ground below May's room saw a syringe and a small zip-lock bag sail from the balcony and land at his feet. The syringe and bag both contained cocaine.
 
 
 8
 In the room, Wolflick observed in plain sight the opened Federal Express package, marijuana, a substance that was later confirmed to be methamphetamine, and various narcotics paraphernalia. Wolflick secured the room pending a search warrant. The defendant and Ms. Johnson were arrested.
 
 
 9
 While in the hotel room, May told Wolflick he wanted to cooperate. May also admitted to Wolflick that he had a gun in the room. May and Johnson were read their rights and were transported to the U.S. Customs office to be interviewed. May signed a standard rights form and a consent to search his hotel room. While his officers were interviewing May, Wolflick prepared the search warrant affidavit. After the interview, May offered to cooperate with Customs by helping them arrest various drug dealers and did so for approximately a week and a half. Wolflick terminated the arrangement when May was caught breaking into an apartment. May then fled, but was found two weeks later in Saipan.
 
 
 10
 May moved to suppress the evidence seized at and below his hotel room during the warrantless search and the statements he made to the officers. The district court denied his motion, finding the search and seizure to be justified by exigent circumstances and that May's statements were voluntarily given.
 
 
 11
 On appeal, May argues for the first time that the agents lacked probable cause to enter his hotel room. He further contends (1) the agents' warrantless search of his room violated his rights under the Fourth Amendment; (2) he did not voluntarily abandon the items he threw out the hotel window; (3) his consent to the search of his room was not voluntary; (4) his statements to the agents were not voluntary; and (5) his consent and statements were the fruit of illegal government action. In a Supplemental Pro Se Brief, May also maintains that the Guam customs officers violated his rights under the Fourth Amendment and under 39 U.S.C. Sec. 3623(d) by opening the Federal Express package without a warrant or probable cause.
 
 II.
 
 12
 A. Issues Not Raised Below.
 
 
 13
 May raised for the first time before this court two questions: whether the customs agents had probable cause to enter his hotel room and whether the customs officers violated his rights by opening the Federal Express package without a warrant or probable cause. We will generally not consider issues raised for the first time on appeal. Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985). Although we have discretion to do so where the issue is purely one of law[2] and the factual record is fully developed, Alaska v. Ahtna, Inc., 891 F.2d 1401, 1405 (9th Cir.1989), cert. denied, 495 U.S. 919 (1990), where, as here, the facts are not fully developed below, we decline to exercise this discretion. See Bolker, 760 F.2d at 1042.
 
 
 14
 In his motion to suppress, not only did May not argue that agents lacked probable cause to enter his hotel room, he argued that there was probable cause to search the room and therefore the officers should have obtained a warrant. Because May conceded probable cause below, the issue was neither briefed nor argued before the district court.[3] Accordingly, we will not consider May's probable cause argument here.
 
 
 15
 Similarly, since May did not contest before the district court the validity of the Federal Express package search, the record is devoid of evidence on the issue. A determination whether a warrant was required or probable cause existed will depend on the factual record and the factual record has not been developed on the question. Had the issue been raised below, the government could have presented testimony of the Guam customs officers to address their conduct in opening the package. As the record stands, there is simply no basis on which this court can evaluate May's tardy claims.
 
 
 16
 B. Exigent Circumstances.
 
 
 17
 We review the district court's finding that exigent circumstances justified the agents' warrantless search de novo. United States v. Echegoyen, 799 F.2d 1271, 1277-78 (9th Cir.1986). However, the district court's underlying findings of fact will not be reversed unless clearly erroneous. United States v. Lindsey, 877 F.2d 777, 780 (9th Cir.1989).
 
 
 18
 This court defines exigent circumstances as:
 
 
 19
 [T]hose circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.
 
 
 20
 Id. at 780-81 (emphasis added) (quoting McConney, 728 F.2d at 1199). "We evaluate the reasonableness of the warrantless entry in view of the totality of the circumstances seen from the perspective of the police officers at the time of the entry." United States v. Lai, 944 F.2d 1434, 1442 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992). The government has the burden of demonstrating that exigent circumstances existed, and, as part of this showing, must establish that a warrant could not have been obtained in time. United States v. Tarazon, 989 F.2d 1045, 1049 (9th Cir.), cert. denied, 114 S.Ct. 155 (1993).
 
 
 21
 Here, the agents' forcible entry after May slammed the door "was necessary to prevent ... the destruction of relevant evidence." Lindsey, 877 F.2d at 780. May's conduct in slamming the door upon seeing uniformed officers gave rise to a reasonable belief, and probable cause to believe, that he knew the Federal Express package contained contraband. Given this reaction, the officers reasonably feared that May would immediately dispose of the small packages of narcotics which they knew to be in the room.[4] Clearly, the officers did not have enough time to secure even a telephonic warrant at this point, but rather had to rush into the room to prevent imminent disposal of the evidence.
 
 
 22
 May contends that the officers manufactured exigent circumstances in order to avoid the warrant requirement. The district court properly rejected this theory: "I don't think they did. I place a good deal of credibility on the experienced officer [Wolflick] and his testimony, and what he said makes sense." RT at 86. The district court's assessment of credibility is entitled to special deference. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). Moreover, Agent Wolflick's testimony is consistent with the district court's finding of good faith. Wolflick testified he did not believe that he had probable cause to search May's hotel room until May's suspicious behavior demonstrated awareness that the package contained narcotics. Wolflick intended to speak with May, to ascertain whether May knew narcotics were in the package and whether May would "cooperate." Once May slammed the door, which in Wolflick's mind created probable cause, there was insufficient time to seek a warrant. Wolflick then refrained from searching the room until he had secured a warrant, despite May's consent to search. From this record, "[t]here is no basis for finding that the officials created exigent circumstances as a means of obviating the need for obtaining a warrant." Tarazon, 989 F.2d at 1050.
 
 
 23
 C. Voluntary Abandonment.
 
 
 24
 If May voluntarily abandoned the drugs and paraphernalia when he tossed it over the balcony, he has no standing to contest its search and seizure. United States v. Garcia, 909 F.2d 389, 391 (1990) (citing United States v. Jackson, 544 F.2d 407, 409 (9th Cir.1976)). As abandonment is "primarily a question of intent," Jackson, 544 F.2d at 409, whether May abandoned property is a question of fact to be reviewed for clear error. United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir.1986).
 
 
 25
 The district court properly found that May voluntarily abandoned any privacy rights he previously possessed in the items he tossed over the balcony to the parking lot. As the Supreme Court has held, a person has no reasonable expectation of privacy in discarded objects. California v. Greenwood, 486 U.S. 35 (1988).
 
 
 26
 Where, however, abandonment is the result of unlawful police conduct, as opposed to voluntary relinquishment, standing to challenge the introduction of the abandoned items is preserved if there is a nexus between the allegedly unlawful police conduct and the abandonment of the property. United States v. Gilman, 684 F.2d 616, 620 (9th Cir.1982). May contends that he abandoned the drugs and paraphernalia because of the officers' unlawful conduct and therefore he has standing to challenge the introduction of the evidence. Because the officers' warrantless entry into his hotel room was justified by exigent circumstances, however, there is no "unlawful police conduct" to link with the abandonment.
 
 
 27
 May makes much of the fact that the officers did not identify themselves as police officers when the manager knocked on his hotel room door and announced "room service" or "maid service." Even assuming that the officers were posing as hotel employees, such conduct would not be unlawful under the circumstances. "[O]fficers can obtain an invitation to enter a private place through a ruse in order to investigate criminal activity." United States v. Garcia, 997 F.2d 1273, 1280 (9th Cir.1993). In particular, we have held it is permissible for an officer to conceal his identity as a government official to obtain entry onto private property. United States v. Allen, 675 F.2d 1373, 1382 (1980) (federal customs officer investigating a suspected drug importation scheme could conceal his identity when accompanying officers of the Bureau of Land Management who were visiting the defendant's ranch for the purpose of obtaining an easement), cert. denied, 454 U.S. 833 (1981).
 
 
 28
 May seems to argue the officers improperly obtained entry through "misrepresentation." While it is true that a government agent may not "obtain entry by 'misrepresenting the scope, nature or purpose of a government investigation,' " Garcia, 997 F.2d at 1280 (quoting United States v. Bosse, 898 F.2d 113, 115 (9th Cir.1990)), the misrepresentation that is prohibited entails more than merely concealed identity. The prohibition applies to government officials who in fact identify themselves as government officials, but misrepresent their purpose to the suspect in order to obtain information. As we stated in Bosse, "[a] ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent." Id., 898 F.2d at 115 (federal agent may not pose as a state license inspector to gather evidence to support a search warrant). Such misrepresentation is prohibited in order to preserve the public's trust in the government:
 
 
 29
 When a government agent presents himself to a private individual, and seeks that individual's cooperation based on his status as a government agent, the individual should be able to rely on the agent's representations. We think it clearly improper for a government agent to gain access to records which would otherwise be unavailable to him by invoking the private individual's trust in his government, only to betray that trust.
 
 
 30
 Id. (quoting SEC v. ESM Government Securities, Inc., 645 F.2d 310, 316 (5th Cir.1981)). Here, May was not informed that the people seeking entry were government agents. May's misrepresentation argument is therefore unavailing.
 
 
 31
 Similarly, we must reject May's argument that because the officers violated the knock-notice rule their entry was illegal. 18 U.S.C. Sec. 3109. The existence of exigent circumstances justifies a decision to dispense with knock-notice. See United States v. Reed, 15 F.3d 928, 934 (1994); Lindsey, 877 F.2d at 782-83. As in Reed, the officers "did not act unreasonably in forcibly entering ... [the defendant's] room after he closed the door." Id., 15 F.3d at 934.
 
 
 32
 D. Consent and Statements.
 
 
 33
 The district court's finding that May voluntarily consented to the search of his room is a finding of fact that will not be reversed unless clearly erroneous. See Lindsey, 877 F.2d at 783. We review the voluntariness of May's confession de novo, while the district court's findings as to the underlying facts are reviewed for clear error. United States v. Benitez, 34 F.3d 1489, 1495 (9th Cir.1994), cert. denied, 63 U.S.L.W. 3643, 1995 WL 50076 (Feb. 27, 1995). The government must prove that May's confession was voluntary by a preponderance of the evidence. Id.
 
 
 34
 May failed to present any evidence to support his argument that his consent to search was involuntarily given. It is undisputed that May offered to cooperate with Wolflick and the other officers and consented to their searching his room.
 
 
 35
 May has also proffered no evidence to demonstrate the asserted involuntariness of his statements. The evidence is uncontradicted that immediately upon his arrest, May told Wolflick that he wanted to cooperate and that he was given Miranda warnings. For a time, May cooperated with government officials in their attempts to locate drug dealers.
 
 
 36
 On appeal, May raises for the first time the contention that his statements should be suppressed as the product of an illegal arrest. Wong Sun v. United States, 371 U.S. 471 (1963). As we have already determined, no illegal arrest occurred which could taint May's statements.
 
 
 37
 In conclusion, therefore, the district court properly denied May's motion to suppress the statements and evidence obtained as a result of the search of his hotel room.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At oral argument, counsel for the government stated the record did not reflect that the manager said "room service." However, in May's sworn statement dated February 2, 1993, May recalled: "There was a knock on the door I asked who it was Room Service answered I told them to come back later." (emphasis added). Moreover, Karen Johnson, who was in the hotel room at the time, testified as follows:
 A. There was a knock at the door.
 Q. And?
 A. It was maid service. He [May] said "come back later."
 Reporter's Trial Transcript Vol. I, at 63 (Aug. 2, 1993).
 
 
 [2]
 Probable cause is a mixed question of law and fact that is treated as a legal issue and reviewed de novo. See United States v. McConney, 728 F.2d 1195, 1203 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984) (citing Ker v. California, 374 U.S. 23 (1963))
 
 
 [3]
 The district court disagreed with defendant's concession and held there was no probable cause to get a search warrant prior to the officers' arrival at the hotel; for, even though the agents knew that the package contained illegal drugs, the agents could not have been certain that May was knowingly in possession of contraband. Reporter's Transcript of Motion to Suppress ("RT") at 86 (July 9, 1993). Accordingly, the court held probable cause to enter the hotel room was created when May slammed the door in response to the officers' announcement "Guam Police" since such behavior confirmed that May was aware of the package's contents
 
 
 [4]
 Agent Wolflick also testified that his knowledge of May's prior criminal record led him to believe May was in possession of a gun at the time. RT at 54