59 F.3d 174
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Allen W. DAVIS, Plaintiff - Appellant,
v.
COUNTY OF MAUI, et al., Defendants - Appellees.
 No. 93-17331.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1995.
Decided June 26, 1995.
 
 Before: PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-Appellant Allen W. Davis ("Davis") brought this Sec. 1983 civil rights action against the County of Maui, Hawaii and individual police officers (collectively, "defendants") alleging that his constitutional rights were violated when the police entered his house without a warrant and arrested him. Davis now appeals the district court's denial of both his motion for judgment as a matter of law at the close of the defendants' case and his renewal of that motion after trial pursuant to Fed. R. Civ. P. 50(b), arguing that the defendants failed to present sufficient evidence from which the jury properly could conclude that the warrantless search of his home was justified by both probable cause and exigent circumstances. We have jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 I.
 
 3
 We review de novo a district court's denial of both a motion for directed verdict and a motion for judgment notwithstanding the verdict. Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 605 (9th Cir. 1993) (directed verdict); Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir. 1993) (judgment n.o.v.), cert. denied, 114 S. Ct. 2163 (1994). Directed verdict is appropriate when the evidence permits only one reasonable conclusion as to the verdict. McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed sub. nom. Casares v. Spendthrift Farm, Inc., 113 S. Ct. 399 (1992); see Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). In reaching this decision, the district court must view the evidence in the light most favorable to the nonmovant. See generally Wright & Miller, Federal Practice and Procedure Sec. 2524 (2d ed. 1995).
 
 
 4
 Similarly, "[a] JNOV is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's." Vollrath, 9 F.3d at 1460; see also Corkrum v. Whitney, 479 F.2d 84, 85 (9th Cir. 1973) (standards for granting a judgment n.o.v. and directed verdict the same; neither should be granted unless the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict).
 
 II.
 
 5
 The facts giving rise to this litigation occurred in Makaawao, Maui, Hawaii, on March 26, 1992, beginning at 12:50 p.m. Officer Garett Benito ("Benito") was on a follow-up call on another matter when he drove by a residence. Benito observed a man (later identified as Davis) looking into an open window of the house. When Davis saw Benito, he turned away, put his foot on the bumper of a car in the driveway and looked down. Davis then "peeked up" and looked at Benito as the officer drove by the house.
 
 
 6
 Finding Davis' behavior suspicious, Benito drove around the block to investigate further. Benito testified that he intended to speak to Davis if he was still in the driveway when Benito returned. If Davis were gone, Benito intended to investigate the situation.
 
 
 7
 Davis was sitting on the car in the driveway when Benito returned. Benito stopped in front of Davis' house and wrote down the license plate number of the car. He then started to get out to speak to Davis. As he opened his car door, Benito saw Davis run around the side of the house. Benito followed, but did not see where Davis had gone. He did observe, however, that the sliding glass door to the rear patio was standing slightly open. The screen door was completely open and the curtains were drawn. At this point, Benito called in a possible burglary in progress and requested assistance.
 
 
 8
 Officer Melvin Lorenzo ("Lorenzo") was the first officer to arrive in response to Benito's request for back-up. Lorenzo also observed that the sliding glass door was slightly open. Benito and Lorenzo then met at the side of the house, where Benito advised Lorenzo of what had transpired.
 
 
 9
 Officer Richard Su'apaia ("Su'apaia") arrived next and met with the other two officers. Lorenzo then returned to the front of the house to investigate the car in the driveway. Because the car's engine was still warm, Lorenzo concluded the car had recently been driven. Lorenzo ran a check on the car's registration, which revealed that it was registered to Davis at an address in a different city. He then removed mail from the mailbox in an attempt to determine the owner of the property. The radio dispatch officer informed Lorenzo that Peter Winkler (whose name appeared on some of the mail) owned the house, but the dispatcher was unable to provide a telephone number for Winkler.
 
 
 10
 Lorenzo and Su'apaia then checked a cottage at the back of the property and found it locked. Returning to the house, all three officers began knocking on the doors and walls and ringing the doorbell. They identified themselves as police officers and asked that, if anyone was inside, they come out. This activity continued for approximately ten to fifteen minutes. The officers received no response from inside the house.
 
 
 11
 The officers attempted to contact their supervisor to discuss the situation. The supervisor, however, could not be reached because he was approximately 20 miles away on another assignment. They then decided to enter the house through the open glass door.
 
 
 12
 Upon entering the house, the officers found Davis in the kitchen. They ordered Davis to the ground and performed a field pat-down. Lorenzo asked if Davis lived there, and Davis responded, "No." Davis was then handcuffed and arrested on suspicion of burglary. As the officers subsequently learned, however, Davis did in fact live in the house, which he leased from Peter Winkler.
 
 
 13
 Davis sued the County of Maui and the individual officers pursuant to 42 U.S.C. Secs. 1983 and 1985. He alleged a violation of his fourth amendment rights, false arrest, false imprisonment, trespass, assault, and negligent infliction of emotional distress. At the close of the defendants' case, Davis moved for directed verdict, arguing that the defendants failed to present evidence to support their defense that exigent circumstances justified the warrantless search. The district court denied Davis' motion. The jury subsequently found for the defendants, and Davis filed a motion for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b). The district court denied the JNOV motion and Davis appealed.
 
 III.
 
 14
 Warrantless searches are per se unreasonable in the absence of exigent circumstances. See Coolidge v. New Hampshire, 403 U.S. 443, 470-71 (1971). When a warrantless search is challenged, the government must demonstrate both probable cause and exigent circumstances excusing the lack of a warrant. See United States v. Lindsey, 877 F.2d 777, 780 (9th Cir. 1989). In demonstrating the presence of exigent circumstances, the government also must show that the officers could not have obtained a warrant in time. Lindsey, 877 F.2d at 781. We can only reverse the district court's denial of Davis' motions if the only "reasonable conclusion" to be drawn from the evidence is that the defendants failed to prove probable cause or exigent circumstances, or both.
 
 A. Probable Cause
 
 15
 "'Entry into a person's home is so intrusive that such searches always require probable cause regardless of whether some exception would excuse the warrant requirement."' Lindsey, 877 F.2d at 780 (quoting United States v. Howard, 828 F.2d 552, 555 (9th Cir. 1987)). Probable cause requires "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life" that a crime has been, is being, or is about to be committed. Hopkins v. City of Sierra Vista, 931 F.2d 524, 527 (9th Cir. 1991) (internal quotations deleted).
 
 
 16
 In determining whether entry into a residence was supported by probable cause, we make a "practical, common-sense decision" whether, under the totality of the circumstances known to the police when they entered the house, a "fair probability" existed that contraband or evidence of a crime would be found inside. Illinois v. Gates, 462 U.S. 213, 238 (1983).
 
 
 17
 The evidence presented by defendants at trial recounted the events hereinabove described. We conclude that a jury, presented with this evidence, could reasonably conclude that the defendants had a "reasonable belief" that a crime--namely, burglary--had been, was being, or was about to be committed.
 
 2. Exigent Circumstances
 
 18
 Exigent circumstances are "'those circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts."' Lindsey, 877 F.2d at 780-81 (quoting United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984)). When the police, as here, have knocked and announced their presence and are able to make the warrantless entry without physical destruction of property, they need only show a "mild exigency" to justify their actions. See United States v. Lai, 944 F.2d 1434, 1442 (9th Cir. 1991), cert. denied sub nom. Brandon v. United States, 502 U.S. 1062 (1992).
 
 
 19
 "'The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion."' Lindsey, 877 F.2d at 781 (quoting United States v. Licata, 761 F.2d 537, 543 (9th Cir. 1985)). They must be able to point to "specific and articulable facts" supporting their belief. See United States v. Whitten, 706 F.2d 1000, 1014 (9th Cir. 1983), cert. denied 465 U.S. 1100 (1984). A mere subjective belief that danger existed is insufficient. See United States v. Suarez, 902 F.2d 1466, 1468 (9th Cir. 1990).
 
 
 20
 We must reverse the district court's denial of Davis' motion if the only reasonable conclusion that the jury could have reached when presented with the evidence in this case was that defendants failed to demonstrate the presence of exigent circumstances justifying the warrantless entry into Davis' home. We do not believe this to be the case, however. Although the presence of exigent circumstances under these circumstances may be a somewhat closer question than the existence of probable cause, we hold that the jury nevertheless could have reasonably concluded from the evidence presented that exigent circumstances existed.
 
 IV.
 
 21
 For the foregoing reasons, the district court's denial of Davis' motion for judgment as a matter of law is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3