**UNITED STATES of America, Plaintiff,**

v.

**William CREECH and Shawna Schulze, Defendants.**

**No. CR 96–71–M–DWM.**

United States District Court, D. Montana, Missoula Division.

May 6, 1997.

Laurence J. Ginnings, Ginnings Law Office, Missoula, MT, for William Creech.

Michael Donahoe, Federal Defenders of Montana–Helena Branch, Helena, MT, for Shawna Schulze.

Neil Leitch, Leitch Law Office, Missoula, MT, for Diamond Jade Jewell.

Kris A. McLean, Office of the U.S. Atty., Missoula, MT, for U.S.

## ORDER

MOLLOY, District Judge.

A hearing on Defendant William Creech's Motion to Suppress was held on April 24, 1997. For reasons set forth below, Defendant's Motion is **DENIED**.

### I. Introduction

Defendant seeks to suppress evidence seized as a result of an admittedly warrantless entry of his motel room. Also, he seeks to suppress all statements made by him during police interrogation in connection with the allegedly illegal search and seizure.

### II. Facts

The facts, as set out in the briefs and as adduced at the hearing, are not in dispute. On October 10, 1996, Officer Rich Parker, of the Kalispell Police Department and North West Drug Task Force, received a very detailed crime-stoppers tip from California at approximately 12.10 a.m.

The tipster related the following information: William Creech had recently left Pasadena headed for Kalispell. In his possession, Creech had a dismantled methamphetamine lab and a Mossberg shotgun. Creech was accompanied by a female named Shawna,

who was driving a yellow Volvo with Montana number plates. In part the number plates were AR 473. Creech was currently at the White Birch Motel in Kalispell in either Room 7 or 8 and was in the process of manufacturing methamphetamine.

Officer Parker went to the White Birch Motel. Outside Room # 8 Parker observed a vehicle with California license plates and a yellow Volvo with Montana plates. A records check revealed that the Volvo was registered to Steven Schulze. Shawna Schulz was listed as residing at the address shown for the Volvo registration.

While Parker believed the tip was extremely accurate, he felt he did not yet have probable cause for a search warrant. He consulted with his superior, Officer Jim Browder. Browder decided to place Room 8 under surveillance and summon a drug-sniffing dog.

Browder arrived on the scene at approximately 1.30 a.m. He first contacted the motel manager and confirmed that Room 8, a freestanding cabin-type structure, was rented to William Creech. Officers Parker, Browder and Squires, the dog-handler, then approached the cabin with a trained drug-sniffing dog. Browder testified that the air conditioner was running and a strong chemical odor emanated from it. Both Parker and Browder stated that they associated the odor with a methamphetamine lab.

When Officer Squires took the dog to the front of the building it indicated an "alert" by bringing its head up and wildly wagging its tail. Then the dog began to move in towards the building. The dog then unexpectedly stood on its hind legs and scratched at the window ledge of the cabin. Officer Squires pulled the dog back. Nonetheless, the dog again went forward and scratched at the window a second time. In Officer Squires' opinion, the dog was alerting to illegal substances. Officer Squires also observed that the window scratching was not a trained behavior. Yet because it happened the police were forced to make unanticipated decisions at the scene.

The officers moved away from the cabin and conferred on what to do next. Officers Browder and Parker stated that they believed that a methamphetamine lab was in progress and that the occupants of the cabin had been alerted by the dog scratching at the window ledge. The situation presented was one in which there was significant risk of evidence destruction. The Officers decided to confront the occupants of the cabin.

Officer Browder knocked on the door of Room 8 and announced their presence by declaring, "Sheriff's Office." William Creech opened the door and stepped outside, closing the door behind him. When asked for identification Creech produced his California drivers' license. In response to the Browder's questions, Creech denied any possession of controlled substances. He responded that two women were in the room with him. When asked about the strong chemical odor, he declared that he and the women were burning incense. He refused to allow a search of the room.

The Officers told Creech they would need to speak with the women. Creech re-entered the room and attempted to close the door on the two police officers. Officer Browder prevented Creech from closing the door and stepped into the room. Officer Parker followed close behind with gun drawn. The officers testified that they followed Creech into the room because they feared he was armed with the Mossberg shotgun reported in the tip from California, a tip that proved highly accurate.

When Officer Browder entered the room he saw one female sitting on the bed and another on a chair to his right. The shotgun lay on the bed. The officers saw assorted glassware of the type used in methamphetamine manufacturing. The officers placed all three individuals under arrest. They made a protective sweep of the cabin before securing it and applying for a search warrant. A search warrant was subsequently obtained and executed by agents of the DEA whom Browder contacted after securing the cabin.

### III. Discussion

Defendant argues that under the Fourth Amendment the police officers were required to obtain a search warrant before entering the hotel room. He further argues that to

justify a warrantless search the government must show both probable cause and exigent circumstances.

The government asserts that probable cause existed to search the hotel room and that exigent circumstances justified the warrantless entry. The exigency arose when the drug dog scratched at the window ledge, causing the police to believe that the occupants of the cabin had been alerted to their presence. The police action thereafter was justified by the need to prevent the destruction of evidence. Under these facts, the government's argument is more persuasive.

It is well settled that the warrantless search of a person's residence is presumptively unreasonable under the Fourth Amendment. *Welsh v. Wisconsin*, 466 U.S. 740, 748–49, 104 S.Ct. 2091, 2096–97, 80 L.Ed.2d 732 (1984). This applies whether the residence is a motel room, *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964), or even a tent, *United States v. Gooch*, 6 F.3d 673, 678 (9th Cir.1993).

■ However, a warrantless search may be permissible under the "exigent circumstances" exception to the Fourth Amendment's warrant requirement. Under Ninth Circuit authority:

> [Exigent circumstances are] those circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

*Murdock v. Stout*, 54 F.3d 1437, 1441 (9th Cir.1995).[1] Exigent circumstances should be assessed by the court "in view of the totality of the circumstances from the perspective of the police officers at the time of the entry." *Id.* at 1441. It is the government's burden to show exigent circumstances and part of that showing entails demonstrating that a warrant could not be obtained in time. *United States v. Lindsey*, 877 F.2d 777, 780 (9th Cir.1989). Even if exigent circumstances exist, the police must also have probable cause to enter the premises. *Id.* at 780.

■ On the issue of probable cause there can be no doubt—the situation was positively oozing with probable cause. The detailed tip from California had been corroborated in almost every respect, the officers had both detected an odor they associated with methamphetamine labs, and the trained dog had alerted to the presence of controlled substances. The officers had probable cause to believe that methamphetamine was being produced in the cabin.

■ Exigent circumstances arose in this case when the drug-sensing dog unexpectedly scratched at the window of the cabin and the officers believed that the occupants had been alerted to their presence.[2] The Ninth Circuit has admonished that in circumstances where police are responding to a possible crime-in-progress, here the operation of a methamphetamine lab, "police judgments should be afforded an 'extra degree of deference.'" *Murdock*, 54 F.3d at 1442.

The officers reasonably thought that evidence might be destroyed if they did not act quickly. As an aside, Officers Parker and Browder stated that volatile chemicals are used in the manufacture of methamphetamine, posing a potential threat to public safety.

The Ninth Circuit found exigent circumstances under similar scenarios to this case. *See United States v. Brock*, 667 F.2d 1311,

---

1. The United States Supreme Court has not set out a definitive standard for exigent circumstances, *see* Wayne R. LaFave, Search & Seizure, § 6.1(f) (3d ed.1996), but has stated that the one applied by the Minnesota Supreme Court was "essentially correct." *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990). In that case, the Court endorsed the Minnesota Supreme Court's determination that a warrantless entry is justified by hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to the police or other persons. 495 U.S. at 100, 110 S.Ct. at 1690.

2. This finding necessarily disposes of defendant's argument that the police officers manufactured the exigent circumstances by knocking on the door of the cabin. Exigent circumstances had already arisen by the time the officers confronted Creech at the door of the cabin.

1318 (9th Cir.1982) (warrantless search of motor home justified when DEA agents knew explosive chemicals used in methamphetamine production were being used); *United States v. Wilson,* 865 F.2d 215, 216–17 (9th Cir.1989) (warrantless entry into garage was justified where police believed their presence had been announced and police were concerned with the potential for an explosion of ether as well as the destruction of evidence); *United States v. Hicks,* 752 F.2d 379, 384 (9th Cir.1985) (exigent circumstances compelled warrantless entry where police feared the imminent destruction of evidence).

Viewed from the totality of the circumstances known to the officers on the scene, exigent circumstances justified the warrantless entry into the motel room. The officers had probable cause to believe that a methamphetamine lab was in operation and that those involved were likely armed. The Officers also believed that the occupants of the cabin had been alerted to their presence by the actions of the drug-sniffing dog. They reasonably believed that evidence would be destroyed. Their concern for public safety due to the chemicals used in methamphetamine manufacture was reasonable.

The defendant also takes issue with the search warrant that was obtained after the motel room had been secured. Defendant argues that there is nothing in the application for the search warrant to indicate to the issuing judge that the police had already entered the motel room.

■ Paragraphs 10 and 11 of the Application for Search Warrant describe the officers contact with Creech at the cabin door but do not mention that they actually entered the cabin. Even if this omission is characterized as tainted evidence, the mere inclusion of tainted evidence in an affidavit for a search warrant does not in itself taint the warrant or evidence seized pursuant thereto. *United States v. Vasey,* 834 F.2d 782, 788 (9th Cir. 1987). Instead, "a reviewing court should excise the tainted evidence and determine whether the remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Id.*

■ Here, the Application contains significant evidence of probable cause even if the offending paragraphs are excised. In paragraphs 1–9, the Application describes all the events up to the point when Officer Browder knocked on the door. Thus, the search warrant obtained subsequent to the entry and securing of the cabin is valid.

## IV. Conclusion

For all of the foregoing reasons, Defendant's Motion to Suppress is **DENIED.**